FILED
MISSOULA, MT

2006 OCT 12 PM 3 18

PATRICK E. DUFFY
BY _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | | |
|---|---|---|
| WILBURN LONGKNIFE, | ) | CV 06-28-M-CSO |
| Plaintiff, | ) | |
| vs. | ) | ORDER |
| JO ANNE B. BARNHART,<br>Commissioner of Social Security, | ) | |
| Defendant. | ) | |

Plaintiff Longknife brings this action under 42 U.S.C. § 405(g) seeking judicial review of an administrative law judge's ruling upholding the Commissioner on Social Security's decision denying Longknife's application for supplemental security income benefits under 42 U.S.C. §§ 1381, 1381(c).

United States Magistrate Carolyn S. Ostby entered Findings and Recommendations in this matter on August 28, 2006. Judge Ostby found that the administrative law judge failed to make required credibility findings with regard to the testimony of Longknife and Longknife's wife, and failed to sufficiently explain his findings as to the demands of Longknife's past work

-1-

and the relationship between his past work and his current residual functional capacity. Plaintiff Longknife also sought review of the administrative law judge's decision to reject the opinion of the treating physician and the judge's refusal to specifically consider certain medical evidence. Judge Ostby found no error on either point.

The parties did not timely object and so has waived the right to de novo review of the record. 28 U.S.C. § 636(b)(1). This Court will review the Findings and Recommendation for clear error. McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc., 656 F.2d 1309, 1313 (9th Cir. 1981). Clear error exists if the Court is left with a "definite and firm conviction that a mistake has been committed." United States v. Syrax, 235 F.3d 422, 427 (9th Cir. 2000).

I can find on clear error with Judge Ostby's Findings and Recommendations and adopt them in full.

Accordingly, IT IS HEREBY ORDERED that the Commissioner's motion for summary judgment (Doc. No. 11) is DENIED, Plaintiff Longknife's motion for summary judgment (Doc. Nos. 20 & 21) is GRANTED, the Commissioner's decision is REVERSED and the case is REMANDED to the ALJ. On remand, the ALJ shall evaluate Longknife's credibility and that of his wife and state his findings on the record. The ALJ is also instructed to clarify his Step Four analysis as required by this Order and Judge Ostby's Findings and Recommendations.

The Clerk of Court is instructed to enter judgment pursuant

to sentence four of 42 U.S.C. § 405(g), reversing the Commissioner's decision and remanding this case for further administrative proceedings consistent with this Order and Judge Ostby's Findings and Recommendations.

DATED this __12__ day of October, 2006.

_____
Donald W. Molloy, Chief Judge
United States District Court

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# MISSOULA DIVISION

| | |
|---|---|
| Wilburn Longknife,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social Security,<br><br>　　　　　Defendant. | CAUSE NO. CV 06-28-M-CSO<br><br>FINDINGS AND<br>RECOMMENDATION OF<br>UNITED STATES<br>MAGISTRATE JUDGE |

　　Plaintiff Wilburn Longknife (Longknife) brings this action under 42 U.S.C. § 405(g) seeking judicial review of the decision of the Commissioner of Social Security (Commissioner) denying his application for supplemental security income benefits (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381-1383(c).

　　The parties have filed cross-motions for summary judgment and the issues are fully briefed. For the reasons stated below, the Court recommends that Longknife's motion for summary judgment be granted, the Commissioner's motion for summary judgment be denied, and this case be remanded for further administrative

Page 1

proceedings.

## I. PROCEDURAL BACKGROUND

Longknife brings this action challenging the Commissioner's decision denying his application for benefits. He protectively filed a benefit application on November 22, 2002, alleging a disability onset date of August 30, 2002. Tr. 60-63. The Administrative Law Judge (ALJ) issued his decision denying Longknife's application on August 25, 2005. Tr. 14-20. The Appeals Council later denied Longknife's request for review, rendering the ALJ's decision the agency's final decision for purposes of judicial review. Tr. 5-7.

## II. STANDARD OF REVIEW

This Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). Substantial evidence also has been described as "more than a mere scintilla" but "less than a preponderance." Sandegathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). The District Court must consider the

Page 2

record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion. <u>Green v. Heckler</u>, 803 F.2d 528, 530 (9th Cir. 1986) (citing <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985)). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." <u>Thomas</u>, 278 F.3d at 954 (citation omitted).

### III. BURDEN OF PROOF

A claimant is disabled for purposes of the Social Security Act if: (1) the claimant has a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months, and (2) the impairment or impairments are of such severity that, considering the claimant's age, education and work experience, the claimant is not only unable to perform previous work, but the claimant cannot "engage in any other kind of substantial gainful work which exists in the national economy." <u>Schneider v. Commr. of Soc. Sec. Admin.</u>, 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. § 1382c(a)(3)(A)-(B)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. <u>Corrao v. Shalala</u>, 20 F.3d 943, 946 (9th Cir. 1994) (citing 42

Page 3

U.S.C. § 1382C(a)(3)).

1.  The claimant must first show that he or she is not currently engaged in substantial gainful activity. <u>Id.</u>

2.  If not so engaged, the claimant must next show that he or she has a severe impairment. <u>Id.</u>

3.  The claimant is conclusively presumed disabled if his or her impairments are equivalent to one on the list of impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.

4.  If the claimant does not have a listed impairment, then the claimant must establish a prima facie case of disability by showing an inability to engage in past work because of the medical impairments. <u>Corrao</u>, 20 F.3d at 946.

5.  Upon such a showing, the burden then shifts to the Commissioner to prove that plaintiff can engage in other types of substantial gainful work existing in the national economy given the claimant's age, education, work experience and residual functional capacity. <u>Jones</u>, 760 F.2d at 995.

If the Commissioner finds that a claimant is disabled or not disabled at any point in this process, the review process is terminated. <u>Corrao</u>, 20 F.3d at 946.

### IV. DISCUSSION

Following the steps in the sequential evaluation process, the ALJ first found that Longknife had not engaged in substantial gainful activity since the August 30, 2002, alleged onset date. Tr. 16. The ALJ next found that Longknife suffered from the following severe impairments: "depressive disorder, NOS, personality disorder, polysubstance abuse disorder, learning disability with a math deficiency, and history of left shoulder acromioplasty surgery." Tr. 16. However, the ALJ found that

Page 4

those impairments did not meet or equal the severity of any impairment described in the Listing of Impairments. Tr. 17-18.

The ALJ then determined that Longknife retained the residual functional capacity (RFC) to perform a limited range of heavy exertional work. Tr. 18. Based on that RFC, the ALJ found Longknife capable of performing his past relevant work as a landscape laborer or ranch hand/farmer. Tr. 20. The ALJ thus concluded that Longknife was not disabled at any time from August 30, 2002 through the date of his decision. Tr. 20.

Longknife challenges the ALJ's decision on several grounds. First, he maintains the ALJ failed to evaluate certain records from his various treating physicians, and failed to cite sufficiently specific and legitimate reasons for rejecting the opinion of his treating psychiatrist, Dr. Mark Sampson. Second, Longknife argues that the ALJ failed to make a specific finding as to his credibility, or that of his wife, as required under Ninth Circuit caselaw. Finally, he contends that the ALJ posed flawed hypothetical questions to the vocational expert (VE), and consequently erred in finding at step four that he could return to his past relevant work. The Court will address each argument in turn.

### A. Treating and Examining Physicians

Longknife first argues that the ALJ failed to cite sufficiently specific and legitimate reasons for rejecting the

Page 5

opinion of treating psychiatrist Dr. Mark Sampson, and improperly disregarded various medical records from other treating physicians.

A treating physician's opinion is entitled to greater weight than that of an examining physician on the basis that he has a "greater opportunity to observe and know the patient." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the records. 20 C.F.R. § 404.1527(d)(2).

The Commissioner may disregard the treating physician's opinion whether or not that opinion is contradicted. Magallanes, 881 F.2d at 751. In discounting the controverted opinion of a treating physician the ALJ must provide "'specific and legitimate reasons' supported by substantial evidence in the record." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (quoting Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). To do so the ALJ must set forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Magallanes, 881 F.2d at 751.

1. Dr. Sampson

Longknife maintains that the ALJ failed to cite sufficiently specific and legitimate reasons for rejecting a psychiatric

Page 6

outpatient treatment report completed by treating psychiatrist Dr. Sampson, in which he estimated Longknife's GAF at 44.[1] Tr. 229. The ALJ acknowledged Dr. Sampson's opinion, but ultimately rejected it for a number of reasons. First, as the ALJ noted, Dr. Sampson's opinion was contradicted by that of Dr. Patenaude. Tr. 19; 137-41; 212-22. While Dr. Sampson saw Longknife only once, Dr. Patenaude evaluated Longknife on two occasions - once in April 2003, and again in September 2004. Tr. 137-41; 212-22. Both times, Dr. Patenaude assigned Longknife a GAF of 60, which would indicate moderate rather than serious impairment in social and occupational functioning. Tr. 137; 220. The ALJ properly rejected Dr. Sampson's assessment in part on the basis that it conflicted with that of Dr. Patenaude. Magallenes v. Bowen, 881 F.2d 747, 751-52 (9th Cir. 1989) (the ALJ is responsible for resolving conflicts in the medical evidence).

The ALJ also rejected Dr. Sampson's assessment on the basis that it was not supported by Longknife's self-reported limitations. Tr. 19. Specifically, the ALJ noted that while the medical expert explained that "a global assessment of function of 44 would indicate the claimant was unable to take care of his

---

[1] GAF is the Global Assessment of Functioning as described in the American Psychiatric Association's "Diagnostic and Statistical Manual of Mental Disorders." A GAF of 44 may indicate serious symptoms or serious impairment in social, occupational or school functioning and. A GAF of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.

Page 7

personal welfare," the record indicated that Longknife was in fact capable of attending to his personal needs. Tr. 19. For example, as the ALJ observed, Longknife reported that his daily activities included fishing, watching movies, reading, drawing, listening to music, doing laundry, cooking, household chores, yardwork, watching television, and exercising. Tr. 19; 83; 289; 292-93. The ALJ found the fact that Longknife engaged in such activities indicated he had "a high functioning ability," contrary to Dr. Sampson's GAF assessment. This Court thus concludes the ALJ properly rejected Dr. Sampson's opinion on the basis that it was contradicted by other medical evidence of record, as well as Longknife's own testimony.

### 2. Other medical records

Longknife points to certain medical records that the ALJ did not specifically discuss in his decision, and argues he erred by because he "flatly ignored pertinent medical evidence which was before him." Pl's Br., at 7. For example, he points to a state hospitalization records from June 1991, in which he was given a "poor" prognosis. Tr. 109. Longknife fails to explain how this evaluation, which predates his alleged onset date by more than ten years, has any bearing on his condition after August 2002. Longknife also points to medical records documenting treatment he received in 2003 for a left shoulder injury. Tr. 142-45. Those records indicate, however, that Longknife's "shoulder [was] doing

Page 8

quite well," and he had "essentially a full range of motion." Tr. 142. Longknife provides simple citations to other medical records as well, but many of those merely report his complaints of a dislocated finger, lumbar strain, seasonal allergies, and an unremarkable lump on his chin. Tr. 186; 187; 189; 195; 198. It is well-established that an "ALJ is not required to discuss evidence that is neither significant nor probative." Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003). Because Longknife fails to explain why these records are particularly significant or probative, the Court concludes the ALJ did not err by failing to specifically discuss them.

### B. Credibility

Longknife next argues that the ALJ erred by failing to make an explicit finding as to his credibility, as required under Ninth Circuit caselaw. This Court agrees. As the Ninth Circuit has explained, "courts have consistently required that there be an explicit finding whether the Secretary believed or disbelieved the claimant whenever the claimant's credibility is a critical factor in the Secretary's decision." Abalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990). In Abalos, the Ninth Circuit overturned the ALJ's decision denying benefits because the ALJ failed to "expressly discredit[]" the claimant's testimony or "articulate any reasons for questioning her credibility." Abalos, 907 F.2d at 874. The Abalos court held that "[a]n 'implicit' finding that [the claimant] was not credible" was insufficient. Abalos, 907 F.2d at 874.

Page 9

Here, as in <u>Abalos</u>, the ALJ failed to make an explicit finding as to whether he believed or disbelieved Longknife's testimony. Tr. 19. Departing from the Commissioner's standard approach, the ALJ did not set forth a list of specific findings at the conclusion of his written decision. Although the ALJ did incorporate findings on other issues in the text of his decision, nowhere did he specifically state whether he found Longknife's testimony credible. According to the Ninth Circuit, his failure to do so constitutes reversible error. <u>Abalos</u>, 907 F.2d at 874.

The ALJ did address some of the factors set forth in SSR 96-7p in the text of his decision. SSR 96-7p is a ruling that clarifies when the evaluation of symptoms requires a finding about the credibility of an individual's statements. The Court finds, however, that many of the ALJ's comments are not supported by substantial evidence of record. For example, according to the ALJ, Longknife indicated that his activities include "caring for children (age 3 months and up)". Tr. 19. What Longknife actually wrote on the form cited by the ALJ, however, was that he helped care for his child "to an extent." Tr. 83. Longknife's testimony at the hearing further suggested that he had trouble caring for his young child. Tr. 289.

The ALJ takes issue with comments of Longknife's attorney, observing, for example, that Longknife's "attorney asserted that the claimant was not compliant with medications and was not able to grocery shop." Tr. 18. According to the ALJ, however, that assertion was undermined by "the testimony of the claimant's

Page 10

wife," who the ALJ wrote had "testified that the claimant was able to go out alone, and did so regularly in dealings with his friends." Tr. 18. This mischaracterizes the testimony by Longknife's wife. While Longknife himself testified that he often went out in the evening to socialize with a friend (Tr. 293-94), his wife testified that she was typically responsible for driving him everywhere. Tr. 301. The ALJ thus erred by mischaracterizing the testimony of Longknife's wife. The Court also notes that the ALJ's comments seem to address the credibility of the arguments of claimant's attorney, rather than the credibility of the testimony of claimant himself.

The Ninth Circuit has also held that "an ALJ must consider lay witness testimony concerning a claimant's ability to work." Stout v. Commissioner, 454 F.3d 1050, 1053 (9th Cir. 2006). "If the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." Stout, 454 F.3d at 1053. The ALJ in this case did not specifically discuss the testimony of Longknife's wife, and did not explain whether he found her believable or not. Although he referenced "wife's testimony" for the proposition that Longfknife "goes out alone," she did not testify to that effect.

Because the ALJ failed to make an explicit finding as to Longknife's credibility, and failed to properly discuss the testimony of Longknife's wife, this case must be remanded for further proceedings.

C. **Step Four Analysis: Ability to Perform Past Relevant Work**

Page 11

Finally, Longknife argues the ALJ erred at step four in the sequential evaluation process when he found Longknife capable of returning to his past relevant work as a landscape laborer and ranch hand/farmer.  Specifically, Longknife maintains that the ALJ posed flawed hypothetical questions to the vocational expert (VE), and consequently erred by relying on the VE's testimony to support his determination that Longknife was capable of returning to his past relevant work.  Whether the ALJ should have incorporated "the limitations described by the lay testimony," as Longknife maintains, will depend on the ALJ's credibility findings on remand.  Regardless, this Court concludes that the ALJ's step four analysis was flawed for other reasons.

At step four in the sequential evaluation process, the Commissioner must decide whether a claimant retains the residual functional capacity to perform his past relevant work.  20 C.F.R. § 404.1520(e).  The Commissioner will find a claimant not disabled if he retains the residual functional capacity to perform: (1) the actual functional demands and job duties of a particular past relevant job, or; (2) the functional demands and job duties of the occupation as generally required by employers throughout the national economy.  SSR 82-61; 20 C.F.R. § 404.1520(e).  The claimant bears the burden of proof at step four, and must establish an inability to return to his former type of work and not just to his particular former job.  Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

While "the burden of proof lies with the claimant at step

Page 12

four, the ALJ still has a duty to make the requisite factual findings to support his conclusion." Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001). The ALJ must make "specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work." Pinto, 249 F.3d at 844 (citing SSR 82-62).

While the ALJ entered specific findings as to Longknife's residual functional capacity, he failed to make sufficient findings as to the physical and mental demands of Longknife's past relevant work, and the relation of his residual functional capacity to that past work. The extent of the ALJ's analysis at step four is as follows:

> The medical expert[2] testified that the claimant's past relevant work as a ranch hand/farmer are both unskilled, heavy exertional work, which are within the claimant's residual functional capacity. (Ex. 9E). In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as performed.

Tr. 20.

As a preliminary matter, this Court notes that it is impossible to tell from the text of the ALJ's decision whether he found Longknife capable of performing the functional demands of his past relevant job as actually performed, or as generally performed throughout the national economy. See Pinto, 249 F.3d at 848 (ordering that ALJ clarify on remand "whether his step

---

[2] Presumably, the ALJ meant to reference the VE's testimony rather than that of the medical expert.

Page 13

four determination was based on [claimant's] past relevant work as actually performed or as generally performed). Also problematic to this Court is the fact that the ALJ relied exclusively on the VE's testimony when assessing Longknife's ability to perform his past relevant work. While the ALJ may rely on VE testimony at step four, "[t]he VE's role in supplying vocational information at step four is much more limited than his role at step five, where he is called upon to give his expert opinion about the claimant's ability to perform work in the national economy." Winfrey v.Chater, 92 F.3d 1017, 1025 (10th Cir. 1996). "While the ALJ may rely on information supplied by the VE at step four, the ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform his past relevant work." Winfrey, 92 F.3d at 1025.

The ALJ in this case did not evaluate the actual requirements of Longknife's past work as a landscape laborer or ranch hand/farmer, and failed to independently evaluate his ability to perform those jobs. Where, as here, "the ALJ makes findings only about the claimant's limitations, and the remainder of the step four assessment takes place in the [vocational expert's] head, [the court is] left with nothing to review." Pinto, 249 F.3d at 847 (quoting Winfrey, 92 F.3d at 1025). Further complicating matters is the fact that, while the ALJ characterized Longknife's prior job as a ranch hand/farmer as unskilled, the record establishes that the job of a ranch

Page 14

hand/farmer is actually semi-skilled. Tr. 98. For these reasons, the Court finds it necessary to remand this case for additional proceedings.

## V.  CONCLUSION

The Court thus concludes that this case should be remanded with instructions for the ALJ to evaluate Longknife's credibility and that of his wife, and enter express credibility findings. The case should also be remanded for the ALJ to clarify his step-four analysis. Accordingly,

**IT IS RECOMMENDED** that Commissioner's Motion for Summary Judgment be **DENIED**, Longknife's Motion for Summary Judgment be **GRANTED**, and the Commissioner's decision be **REVERSED**. Judgment should be entered pursuant to sentence four of 42 U.S.C. §405(g) **REVERSING** the Commissioner's decision and **REMANDING** this case for further administrative proceedings consistent with this decision.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to these findings must be filed with the Clerk of Court and copies served on opposing counsel within ten (10) days after receipt hereof, or

objection is waived.

        DONE and DATED this 28th day of August, 2006

                                      /s/ Carolyn S. Ostby
                                      Carolyn S. Ostby
                                      United States Magistrate Judge